[No. D034567. Fourth Dist., Div. One. Aug. 30, 2000.]

MARIANNE ROTHSCHILD, Plaintiff and Appellant, v.
TYCO INTERNATIONAL (US), INC., et al., Defendants and
Respondents.

## COUNSEL

Finkelstein & Krinsk, Howard D. Finkelstein, Jeffrey R. Krinsk and Arthur L. Shingler for Plaintiff and Appellant.

McKenna & Cuneo, Robert S. Brewer, Jr., and Michael H. Fish for Defendants and Respondents Westburne Supply, Inc., and Marden Susco Company.

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, David S. MacCuish, John M. Rochefort, Kurt Osenbaugh, Todd Benoff; Sheppard Mullin Richter & Hampton and Scott Frank Roybal for Defendant and Respondent Watts Industries, Inc.

Beck, De Corso, Daly & Kreindler, Bryan D. Daly, Anthony A. De Corso, Teresa Reyna Barrera and Suzanne Tracy for Defendants and Respondents Tyco International (US), Inc., James Jones Co. and Mueller Co.

## OPINION

**McINTYRE, J.**—Marianne Rothschild filed an action against Tyco International (US), Inc. (Tyco), Watts Industries, Inc. (Watts), James Jones Co. (Jones), Mueller Co. (Mueller), Westburne Supply, Inc. and Marden Susco Company (collectively, the defendants), alleging that the defendants violated the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 169, fn. 2 [83 Cal.Rptr.2d 548, 973 P.2d 527]). The superior court sustained the defendants' demurrer to Rothschild's second amended complaint without leave to amend, holding that her action was barred by the California False Claims Act (Gov. Code, § 12650 et seq. [all statutory references are to the Government Code unless otherwise specified]), because a separate lawsuit had been filed against the defendants for violations of that statutory scheme based on the same underlying factual allegations that provide the basis for this action. Rothschild appeals, contending that the court erred in finding that her action was barred. We agree and reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the traditional standards of appellate review of a ruling on demurrer, the factual recitation is taken from the allegations of Rothschild's second amended complaint. (*Crystaplex Plastics, Ltd. v. Redevelopment Agency* (2000) 77 Cal.App.4th 990, 993 [92 Cal.Rptr.2d 197].)

For over 100 years, Jones has been in the business of designing, manufacturing and selling water system hardware components, such as valves, balls, saddles and compression nuts, for use in municipal water systems. No later than 1987, and shortly after Jones was acquired by Watts, Jones attempted to cut its costs by purchasing and manufacturing parts made from inexpensive metal alloys that did not meet applicable industry specifications and were not suitable for use in components for systems that carried drinking water. The parts made from the inferior alloys deteriorated more quickly than those made from specification metals and in some instances, contained greater amounts of lead than is permissible under industry standards.

In June of 1997, Nora Armenta, then a Jones employee, filed in the Los Angeles Superior Court a civil qui tam action against Jones, Tyco, Watts and Mueller for violations of the False Claims Act. In her amended complaint, Armenta named as plaintiffs a number of municipal water districts, cities and counties in California (the real parties in interest). She alleged that Jones falsely represented to the real parties in interest that its products conformed to applicable industry standards for water works components and that, as a result of the misrepresentations, Jones's parts were incorporated into municipal water systems throughout the state. Armenta's amended complaint sought, inter alia, the issuance of a cease-and-desist order, as well as the recovery of treble damages and civil penalties of up to $10,000 for each violation of the False Claims Act.

In December 1998, Rothschild filed this action in the San Diego Superior Court on behalf of herself and all others similarly situated, based on virtually identical factual allegations as those set forth in Armenta's amended complaint. Rothschild's action, however, alleged that the defendants' conduct violated the unfair competition law and sought equitable and injunctive relief, including an injunction prohibiting the defendants from continuing their improper practices and restitution of money obtained by the defendants based on their wrongful acts and practices.

The defendants demurred to Rothschild's second amended complaint, arguing in part that her claims were barred by the False Claims Act (specifically, § 12652, subd. (c)(10), hereafter section 12652(c)(10)) based on the

filing of Armenta's action. After hearing oral argument on the matter, the court entered an order sustaining the demurrer without leave to amend and dismissing the action with prejudice.

DISCUSSION

### 1. Appealability

Rothschild appeals the court's order of dismissal, which provided in part that "[j]udgment is hereby entered in favor of defendants . . . ." Although this order is not appealable (Code Civ. Proc., § 904.1; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695 [40 Cal.Rptr.2d 125]) and no judgment appears in the record before us, in the interests of justice and efficiency, we deem the appeal as taken from a judgment of dismissal entered in accordance with the trial court's order. (*Gonzalez v. County of Tulare* (1998) 65 Cal.App.4th 777, 782, fn. 4 [76 Cal.Rptr.2d 707]; *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1225-1226 [57 Cal.Rptr.2d 303].)

### 2. Standard of Review

The question of whether Rothschild's action is barred by the False Claims Act requires the interpretation and application of statutes. As such, the issue presents a question of law, which is subject to our independent review. (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 621 [55 Cal.Rptr.2d 818]; *Service Employees Internat. Union v. County of Los Angeles* (1990) 225 Cal.App.3d 761, 774 [275 Cal.Rptr. 508].)

### 3. Rothschild's Unfair Competition Action

Rothschild brought this action pursuant to California's unfair competition law, the primary purpose of which is to preserve fair business competition by extending protections traditionally available to business competitors to the consuming public. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545], citing *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 109 [101 Cal.Rptr. 745, 496 P.2d 817].) "Unfair competition" is broadly defined to include "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) The coverage of the law is " 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 180, quoting *Rubin v. Green* (1993) 4 Cal.4th 1187, 1200 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) Thus, the unfair competition law "borrows" from other laws, treating violations of

those laws as unlawful practices independently actionable. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103 [53 Cal.Rptr.2d 229].)

■ The unfair competition law imposes strict liability on persons who engage in conduct within its purview; to succeed on an unfair competition claim, it is not necessary to establish that the defendant intended to injure anyone. (*State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1102.) However, remedies under the unfair competition law are generally limited to injunctive relief and restitution of money or property wrongfully obtained. (Bus. & Prof. Code, § 17203; see *ABC Internat. Traders, Inc. v. Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1268 [61 Cal.Rptr.2d 112, 931 P.2d 290]; see also *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 179 [the unfair competition law does not provide for the recovery of "damages, much less *treble* damages, or attorney fees," italics in original]; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1266.) Such remedies are expressly made "cumulative . . . to the remedies or penalties available under all other laws of this state." (Bus. & Prof. Code, § 17205.)

It is clear that a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 182.) However, "[t]o forestall an action under the unfair competition law, another [statutory] provision must actually 'bar' the action or clearly permit the conduct [alleged to be unfair or unlawful]." (*Id.* at p. 183.) The defendants contend that the False Claims Act establishes such a bar.

## 4. *The False Claims Act*

### A. *Introduction*

In 1987, the California Legislature enacted the False Claims Act, patterned on a similar federal statutory scheme (31 U.S.C. § 3729 et seq.), to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1441 (1987-1988 Reg. Sess.) as amended Sept. 8, 1987, p. 5.) As relevant here, the False Claims Act permits the recovery of civil penalties and treble damages from any person who "[k]nowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval." (§ 12651, subd. (a)(1).) To be liable under the False

Claims Act, a person must have actual knowledge of the information, act in deliberate ignorance of the truth or falsity of the information, and/or act in reckless disregard of the truth or falsity of the information. (§ 12650, subd. (b)(2).)

The False Claims Act authorizes the Attorney General (in the case of alleged violations involving state funds) or the prosecuting authority of a political subdivision (in the case of alleged violations relating to funds of the political subdivision) to bring a civil action for violations of its provisions. (§ 12652, subds. (a), (b).) Subject to certain limitations, the False Claims Act permits a private person (referred to as a "qui tam plaintiff" or a "relator") to bring such an action on behalf of a governmental agency. (§ 12652, subds. (c)(1), (d).)

If a qui tam plaintiff files a False Claims Act complaint, he or she must file the complaint under seal and serve it, as well as a written disclosure of the material evidence and information in support of his or her claims, on the Attorney General. (§ 12652, subd. (c)(3).) The Attorney General is required to notify local prosecuting authorities if local funds are involved. (§ 12652, subd. (c)(7), (8).) The action remains sealed for "up to 60 days" (although the statutory period is subject to extension for good cause shown) to permit the state and/or local authorities to investigate and determine whether to proceed in the action. (§ 12652, subd. (c)(8)(D).)

If the state and/or a local prosecuting authority elects to proceed with the action, that agency (or those agencies) have the primary responsibility for prosecuting the action, although the qui tam plaintiff has the right to continue as a party to the action. (§ 12652, subd. (e)(1).) If no prosecuting authority decides to proceed with the action, the qui tam plaintiff has the right to do so subject to the right of the state or political subdivision to intervene in certain circumstances. (§ 12652, subds. (c)(8)(D)(iii) & (f).) Regardless of who prosecutes the qui tam action, if it is successful, the qui tam plaintiff is entitled to a percentage of the recovery achieved in the case. (§ 12652, subd. (g)(2)-(5).)

B. *Statutory Limits on Qui Tam Actions*

As described above, the False Claims Act creates substantial financial incentives for private "whistleblowers" to help uncover and prosecute fraudulent claims made to the government. In an attempt to curb "opportunistic" or "parasitic" actions, however, it also includes a number of provisions that limit the circumstances in which a private person may bring or prosecute a qui tam action. (See § 12652, subd. (d); see generally *U.S. ex rel.*

*Springfield Terminal Ry. v. Quinn* (D.C. Cir. 1994) 14 F.3d 645, 649 [304 App.D.C. 347] [discussing the history of the federal false claims act].) For example, a private person may not bring a qui tam action based on "allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the state or political subdivision is already a party." (§ 12652, subd. (d)(2).) Similarly, there is a jurisdictional bar to a qui tam action under the False Claims Act where the action is based, inter alia, on "the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . ." unless the qui tam plaintiff is an "original source" of the information. (§ 12652, subd. (d)(3)(A).)

■  The False Claims Act also provides that "[w]hen a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the pending action." (§ 12652(c)(10).) The issue presented in this case is whether the latter statutory provision bars Rothschild's action.

### C.  *Interpretation of Section 12652(c)(10)*

In determining this issue, we apply well-established rules of statutory construction.  ■  The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Often, the words of the statute provide the most reliable indication of legislative intent. (*Ibid.*) However, when the statutory language is itself ambiguous, we must examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) " 'When the language is susceptible of more than one reasonable interpretation . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970], quoting *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

### i.  *The statutory language*

■  The defendants contend that, on its face, section 12652(c)(10) prohibits any action arising out of the same facts that serve as a basis for a previously filed False Claims Act suit. However, the language of section 12652(c)(10) does not clearly establish that a "related action" means any action, under any statutory or common law, that is based on the facts

underlying a prior False Claims Act suit. In fact, the defendants' proffered interpretation of section 12652(c)(10) assumes that the word "related" is completely defined by reference to the subsequent language "based on the facts underlying the pending action" and has no separate or independent meaning. In accordance with well-established principles of statutory construction, we must avoid such an interpretation, which would render the word "related" mere surplusage. (See *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] [if possible, significance should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose].) We are not persuaded that section 12652(c)(10) unambiguously precludes the filing of any type of claim based on the prior filing of an action under the False Claims Act, as the defendants suggest.

However, we are no more persuaded by Rothschild's argument that, in accordance with its plain meaning, the statute prohibits only successive actions under the False Claims Act. Although the Legislature could have done so, it did not expressly limit the statutory bar of "related actions" to those brought under the False Claims Act. (Cf. Ins. Code, § 1871.7, subd. (e)(5) ["[w]hen a person or governmental agency brings an action under this section, no person other than the district attorney or commissioner may intervene or bring a related action based on the facts underlying the pending action *unless that action is authorized by another statute or common law*" (italics added)].)

We cannot determine, from the face of the statute, the meaning of the word "related" and thus conclude that the language of section 12652(c)(10) is ambiguous. Thus, we must look to the other provisions and the purposes of the False Claims Act to determine the meaning of section 12652(c)(10). (See *Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].)

### ii. *Other sources of statutory interpretation*

The False Claims Act itself specifies that "[t]he provisions of this article are not exclusive, and the remedies provided for in this article shall be in addition to any other remedies provided for in any other law or available under common law." (§ 12655, subd. (a).) Rothschild argues that this provision makes clear that the Legislature did not intend for section 12652(c)(10) to bar claims arising out of statutory or common law other than the False Claims Act itself and, on this basis, urges us to interpret "related" as referring only to actions under the False Claims Act.

The defendants respond that section 12655 merely provides that a qui tam plaintiff may assert other theories of recovery in a False Claims Act action, but, when read in conjunction with section 12652(c)(10), prohibits such other claims from being asserted in a separate action once a False Claims Act action has been filed. This argument is problematic for several reasons.

First, nothing in section 12655 itself suggests that the assertion of claims or remedies available under other statutory or common law must be asserted in a qui tam action brought pursuant to the False Claims Act. In this regard, we note that the False Claims Act does not prohibit a qui tam plaintiff who is an "original source" of information about false claims from bringing a False Claims Act suit even if there is an existing action asserting other statutory or common law claims arising out of identical underlying facts. (§ 12652, subd. (d)(3)(A).) Thus, it does not appear that, in enacting the False Claims Act provisions, the Legislature was as concerned with protecting False Claims Act defendants from the possibility of separate actions based on other legal theories as the defendants now suggest.

Second, as a practical matter, the defendants' proposed interpretation of section 12652(c)(10) would eliminate potentially viable claims in cases where a qui tam plaintiff does not have standing to assert such non-False Claims Act claims. For example, if Armenta did not live within a water district that utilized Jones's products in its water system, she would not have standing to assert claims, individually or on behalf of a class, under the unfair competition law. (Code Civ. Proc., § 367; see also *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113].) In that context, the defendants' interpretation of section 12652(c)(10) would foreclose the pursuit of such claims by persons injured by the defendants' wrongful conduct. In the absence of specific and direct statutory language to support such an interpretation, we cannot assume that the Legislature intended such a result.

The defendants contend that the legislative history for the federal counterpart to section 12652(c)(10), 31 United States Code section 3730(b)(5), establishes a legislative intent to bar any subsequent action brought based on the same facts as a False Claims Act suit. However, the cited legislative materials are of little assistance to the defendants because the federal act does not include a provision similar to section 12655, in the False Claims Act, making its provisions nonexclusive and its remedies in addition to remedies otherwise available under statutory or common law. Notably, the legislative history for the False Claims Act includes an analysis by the Attorney General describing the language used in section 12652(c)(10) as

precluding only follow-on qui tam actions. (Atty. Gen. John Van de Kamp, letter to Assemblyman Richard E. Floyd re Assem. Bill No. 1441 (1987-1988 Reg. Sess.) June 10, 1987, and attached analysis written by Floyd Shimomura, May 27, 1987.)

In light of the nonexclusivity provision of section 12655, we conclude that the bar on "related actions" under section 12652(c)(10) applies only to subsequent qui tam actions filed under the False Claims Act. A limited reading of section 12652(c)(10) furthers the legislative purpose of the False Claims Act to encourage private persons to disclose and prosecute fraudulent claims made to governmental agencies, while balancing the need to limit the availability of qui tam actions so as to protect against "opportunistic" or "parasitic" actions that would otherwise be encouraged as a result of the statutory financial incentives for bringing such an action.

Such an interpretation also furthers the purposes of the unfair competition law by allowing private claimants to utilize the injunctive and equitable remedies available under that statutory scheme to curb *future* anticompetitive acts and practices, notwithstanding the existence of a qui tam action seeking the recovery of penalties and damages for past violations of the False Claims Act.

The defendants argue that, notwithstanding the different purposes, elements of proof and remedies available under the False Claims Act, on one hand, and the unfair competition law, on the other, there is but one "primary right" underlying claims under both statutory schemes. They assert that, accordingly, it is appropriate to interpret section 12652 to bar all subsequent claims arising out of the same set of facts that provide the basis for a previously filed False Claims Act suit.

Pursuant to the primary right theory and its corollary, the rule against splitting a cause of action, " 'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action.' " (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1145 [95 Cal.Rptr.2d 701, 998 P.2d 403], quoting *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

The application of these principles in this case does not establish that there is but one primary right underlying both Armenta's and Roths-child's claims. In her False Claims Act suit, Armenta is not asserting a right

held by herself or other individuals, but is acting on behalf of the government. Her action arises out of the defendants' wrongful conduct in misrepresenting the nature of Jones's products and submitting claims to the government for those products. By contrast, Rothschild asserts a wholly separate and distinct injury to herself and other individuals similarly situated resulting from the defendants' use of inferior and substandard metals in hardware intended for use in the systems that supply their drinking water. The defendants' argument that the primary right theory of pleading supports an interpretation of section 12652(c)(10) that would bar any and all claims based on the same facts as an existing False Claims Act action is without merit.

## 5. *Conclusion*

In sum, we are persuaded that, pursuant to the existing statutory scheme, the pendency of a suit under the False Claims Act does not preclude a subsequent action for alleged violations of the unfair competition law and we thus conclude that the trial court erred in finding that Rothschild's action is barred by section 12652(c)(10).

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court, which is directed to vacate its order sustaining the defendants' demurrer to the second amended complaint without leave to amend and dismissing the action and to enter a new order overruling the demurrer. Rothschild is to recover her costs of appeal.

Huffman, Acting P. J., and Haller, J., concurred.