[No. A123914. First Dist., Div. Five. Feb. 26, 2010.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT ex rel. MANUEL
CONTRERAS et al., Plaintiffs and Appellants, v.
LAIDLAW TRANSIT, INC., et al., Defendants and Respondents.

440

## COUNSEL

Baron & Budd, Thomas Sims, Patrick O'Connell; Law Office of April Strauss, April Strauss; Environmental Law Foundation, James R. Wheaton and Lynne R. Saxton for Plaintiffs and Appellants.

Reed Smith, Todd O. Maiden, Raymond A. Cardozo and Matthew T. Peters for Defendants and Respondents.

## OPINION

SIMONS, J.—California's False Claims Act (CFCA) (Gov. Code, § 12650 et seq.)[1] permits the recovery of civil penalties and treble damages from any person who knowingly presents a false claim for payment to the state or a political subdivision. Qui tam[2] plaintiffs William Padilla, Manuel Contreras, and the Environmental Law Foundation (plaintiffs) sued defendants Laidlaw Transit, Inc., and Laidlaw Transit Services, Inc. (collectively, Laidlaw), under the CFCA, seeking to recover funds on behalf of the San Francisco Unified School District (District). Plaintiffs allege Laidlaw violated the CFCA by submitting claims for payment to the District at times when Laidlaw knew it was in breach of various terms of its contract to provide student bus transportation services. The trial court sustained Laidlaw's demurrer and ultimately dismissed the action, but we reverse. Under the CFCA, a vendor impliedly certifies compliance with its express contractual requirements when it bills a public agency for providing goods or services. Allegations that the implied certification was false and had a natural tendency to influence the public agency's decision to pay for the goods or services are sufficient to survive a demurrer.

## BACKGROUND[3]

Plaintiffs Padilla and Contreras are former Laidlaw employees. Plaintiff Environmental Law Foundation is a California nonprofit organization "dedicated to the preservation and enhancement of human health and the environment." In May 2007, plaintiffs filed a complaint against Laidlaw alleging

---

[1] All further undesignated section references are to the Government Code.

[2] "Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means 'who pursues this action on our Lord the King's behalf as well as his own.' " (Vermont Agency of Natural Resources v. United States ex rel. Stevens (2000) 529 U.S. 765, 768, fn. 1 [146 L.Ed.2d 836, 120 S.Ct. 1858]; see also Gov. Code, § 12652, subd. (c)(1).)

[3] Because this is an appeal following the trial court's sustaining of Laidlaw's demurrer, we accept as true the factual allegations of the complaint. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

violations of the CFCA. As required by the CFCA, the complaint was filed in camera and under seal to allow the District to investigate and potentially intervene in the action. (See § 12652, subd. (c).) On January 28, 2008, the District filed a notice that it was declining to intervene, and the trial court lifted the seal.

In July 2008, plaintiffs filed their second amended and operative complaint (Complaint), seeking damages and civil penalties on behalf of the District for false claims, records, and statements presented by Laidlaw in violation of the CFCA (§ 12651, subd. (a)(1), (2) & (7).)[4] Plaintiffs also sought for themselves an award of a portion of the damages and penalties, as well as payment of their attorney fees, expenses, and costs of suit.

According to the Complaint, Laidlaw has for a number of years provided bus transportation services under a series of contracts with the District. The Complaint describes certain requirements imposed on Laidlaw in the contract effective between August 16, 2005, and August 15, 2010 (Contract). Those requirements include provisions that Laidlaw: (1) provide school buses meeting state and federal standards relating to pupil transportation; (2) maintain its buses in " 'excellent mechanical condition and appearance' " and replace all vehicles " 'which are deemed to be unfit for providing the required service' "; (3) maintain an extra 10 percent of each type of bus as a spare fleet; (4) provide buses meeting or exceeding specified state and federal safety standards; (5) provide buses meeting a specified particulate matter emissions standard or equipped with a specified emission control device and diesel buses with a " 'closed crankcase emission control system' "; (6) not authorize " 'overnight park-out' " of any buses without prior authorization; and (7) employ a " 'Fleet Maintenance Supervisor' " to " 'establish and maintain a complete and effective preventative maintenance program with complete and accurate records on each vehicle.' " Each of those provisions is a material term of the Contract. The District agreed to provide payment on a monthly basis "for services satisfactorily performed by [Laidlaw] after receipt of properly documented invoices."

The Complaint further alleges that "Laidlaw has been in breach of one or more of these material terms throughout the term of the Contract and at the time Laidlaw has presented invoices, claims or demands for payment to [the District]." The Complaint contains numerous specific allegations describing how the buses utilized by Laidlaw were in inadequate and/or unsafe operating

---

[4] The Complaint contains a typographical error specifying subdivision (a)(1) of section 12651 as the basis for the second cause of action.

condition and failed to meet the pollution control requirements in the Contract. For example, Laidlaw intentionally caused tests of diesel exhaust levels to be falsified so that excessively smoking buses would pass inspection, failed to repair buses that had "[c]racked exhaust pipes which allowed diesel exhaust into the passenger compartment," and falsified safety reports required by the California Highway Patrol so that unrepaired buses could remain in service. Despite these and other breaches of the Contract, Laidlaw presented invoices to the District for payment, with knowledge that it was in breach of the Contract or acting in reckless disregard as to whether it was in breach of the Contract.

The Complaint's first cause of action alleges that Laidlaw violated section 12651, subdivision (a)(1), by knowingly presenting false "claims" to the District for payment or approval. It asserts, "[w]hen Laidlaw submitted monthly invoices for payment, [it] impliedly certified that [it] had met each and every material term of the [C]ontract." The second cause of action alleges that Laidlaw violated the CFCA by knowingly falsifying records and/or statements "in order to get false claims paid or approved by [the District]." The third cause of action alleges that Laidlaw violated former section 12651, subdivision (a)(7), by using "false record[s] or statement[s] to conceal, avoid[,] or decrease an obligation to pay or transmit money or property to [the District]." (See Stats. 2007, ch. 577, § 5.)

Laidlaw demurred to the Complaint.[5] The trial court sustained with leave to amend the demurrer on the first two causes of action and overruled the demurrer on the third cause of action. Plaintiffs did not amend their Complaint, but they dismissed the third cause of action. The trial court entered a judgment of dismissal and this appeal followed.

## DISCUSSION

Plaintiffs contend the trial court erred in sustaining Laidlaw's demurrer to their first cause of action for violation of section 12651, subdivision (a)(1).[6] We review the Complaint de novo to determine whether it alleges facts

---

[5] Laidlaw requested that the trial court take judicial notice of the Contract, including a District resolution regarding the Contract, and requests that this court consider the Contract on appeal. Although it appears the trial court did not rule on that request, plaintiffs did not object below and they cite to the Contract on appeal. We take judicial notice of the Contract, including the resolution. (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 666, fn. 2 [63 Cal.Rptr.3d 537].)

[6] Plaintiffs on appeal do not challenge the dismissal of their second cause of action under section 12651, subdivision (a)(2), which imposes liability for the use of a false record or statement in support of a request for payment. (See *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 739 [60 Cal.Rptr.3d 375].) Accordingly, only the viability of plaintiffs' first cause of action is at issue.

sufficient to state a cause of action under any legal theory. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595 [95 Cal.Rptr.3d 18].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318; see also *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Because plaintiffs elected not to amend, we strictly construe the Complaint and presume plaintiffs have stated as strong a case as they can. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].)

### I. Introduction to the CFCA

The Fourth District described the CFCA in *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488 [99 Cal.Rptr.2d 721] (*Rothschild*):

 "In 1987, the California Legislature enacted the [CFCA], patterned on a similar federal statutory scheme [citation], to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities. [Citation.] As relevant here, the [CFCA] permits the recovery of civil penalties and treble damages from any person who '[k]nowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval.' [Citation.] To be liable under the [CFCA], a person must have actual knowledge of the information, act in deliberate ignorance of the truth or falsity of the information, and/or act in reckless disregard of the truth or falsity of the information. [Citation.]

"The [CFCA] authorizes the Attorney General (in the case of alleged violations involving state funds) or the prosecuting authority of a political subdivision (in the case of alleged violations relating to funds of the political subdivision) to bring a civil action for violations of its provisions. [Citation.] Subject to certain limitations, the [CFCA] permits a private person (referred to as a 'qui tam plaintiff' or a 'relator') to bring such an action on behalf of a governmental agency. [Citation.]

 "If a qui tam plaintiff files a [CFCA] complaint, he or she must file the complaint under seal and serve it, as well as a written disclosure of the

material evidence and information in support of his or her claims, on the Attorney General. [Citation.] The Attorney General is required to notify local prosecuting authorities if local funds are involved. [Citation.] The action remains sealed for 'up to 60 days' (although the statutory period is subject to extension for good cause shown) to permit the state and/or local authorities to investigate and determine whether to proceed in the action. [Citation.]

"If the state and/or a local prosecuting authority elects to proceed with the action, that agency (or those agencies) have the primary responsibility for prosecuting the action, although the qui tam plaintiff has the right to continue as a party to the action. [Citation.] If no prosecuting authority decides to proceed with the action, the qui tam plaintiff has the right to do so subject to the right of the state or political subdivision to intervene in certain circumstances. [Citation.] Regardless of who prosecutes the qui tam action, if it is successful, the qui tam plaintiff is entitled to a percentage of the recovery achieved in the case. [Citation.]" (*Rothschild, supra,* 83 Cal.App.4th at pp. 494–495.)

█ The Legislature designed the CFCA " 'to prevent fraud on the public treasury,' " and it " 'should be given the broadest possible construction consistent with that purpose.' " (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 801 [107 Cal.Rptr.2d 710] (*Pomona*); see also *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1296–1297 [32 Cal.Rptr.3d 498, 116 P.3d 1175] (*Altus*).) In other words, the CFCA " 'must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides.' [Citation.]" (*Pomona,* at pp. 801–802; see also § 12655, subd. (c) ["This article shall be liberally construed and applied to promote the public interest."].) The CFCA is intended "to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities." (*Rothschild, supra,* 83 Cal.App.4th at p. 494.) Given the "very close similarity" of the CFCA to the federal False Claims Act (federal FCA) (31 U.S.C. § 3729 et seq.), "it is appropriate to turn to federal cases for guidance in interpreting the [CFCA]." (*Pomona,* at p. 802; see also *Altus,* at p. 1299 ["the CFCA 'is patterned on similar federal legislation' and it is appropriate to look to precedent construing the equivalent federal [FCA]"]; *State of California v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 746, fn. 3 [48 Cal.Rptr.3d 427] (*Pacific Bell*).)

## II. *Implied Certification Claims Under the CFCA*

The Complaint alleges a fraud on the District, in that Laidlaw sought payments from the District while knowingly failing to provide the services for which the District contracted. Laidlaw contends that it is immune from liability under the CFCA because its invoices did not expressly assert compliance with the requirements of the Contract and because the Contract does not require certification of compliance with contractual terms as a prerequisite to payment.

■ The determination of whether Laidlaw's alleged conduct violated the CFCA is a question of law subject to our independent review. (*Rothschild, supra,* 83 Cal.App.4th at p. 493.) In making the determination, "we apply well-established rules of statutory construction. The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Often, the words of the statute provide the most reliable indication of legislative intent. [Citation.] However, when the statutory language is itself ambiguous, we must examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citation.] ' "When the language is susceptible of more than one reasonable interpretation . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*Id.* at p. 496.)

■ The CFCA imposes liability on any person who "[k]nowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval." (Former § 12651, subd. (a)(1); Stats. 2007, ch. 577, § 5.)[7] There is no dispute that

---

[7] Section 12651 was amended by the Legislature effective January 1, 2010. (Stats. 2009, ch. 277, § 2; see also *People v. Venegas* (1995) 32 Cal.App.4th 1847, 1850–1851 [39 Cal.Rptr.2d 238] [discussing effective date of enactments].) Section 12651, subdivision (a)(1), now imposes liability on any person who "[k]nowingly presents or causes to be presented a false *or fraudulent* claim for payment or approval." (Italics added.) The amendment is not material to the issues in the present case, in which Laidlaw's claims for payment were submitted long before the effective date of the amendment. In particular, in ruling in favor of appellants we do not rely on the change in language from "a false claim for payment" to "a false or fraudulent claim for payment." We express no opinion on whether the addition of "or fraudulent" expands the scope of liability under the CFCA. We do note that the "false or fraudulent" formulation is used in the federal FCA. (See, e.g., *Shaw v. AAA Engineering & Drafting, Inc.* (10th Cir. 2000) 213 F.3d 519, 529 (*Shaw*) [quoting " 'false or fraudulent claim for payment or approval' " language from federal FCA].)

The Legislature also amended other portions of section 12651 and section 12650. (Stats. 2009, ch. 277, §§ 1, 2.) No party has argued that any of the recent amendments to the CFCA are material to the issues in this case.

Laidlaw's invoices were "claims" within the meaning of the CFCA, which defines a "claim" to include "any request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision . . . ." (Former § 12650, subd. (b)(1); Stats. 1997, ch. 300, § 3, eff. Aug. 18, 1997.) Laidlaw initially argues its claims for payment were not false, because there was no literally false information on the face of the invoices, which identify the routes driven and the charges arising from each route. However, Laidlaw ultimately concedes that a section 12651, subdivision (a)(1) false claim need not contain an expressly false statement to be actionable. This is evident from a distinction between the language of section 12651, subdivision (a)(1), and that of section 12651, subdivision (a)(2). Under former section 12651, subdivision (a)(2), liability is premised on the presentation of "a false record or statement to get a false claim paid or approved by the state or by any political subdivision." Section 12651, subdivision (a)(1), however, requires only the presentation of a "false claim for payment or approval" without the additional element of a "false record or statement." (See *Shaw, supra*, 213 F.3d at pp. 531–532 [noting same distinction in federal act].) Thus, liability under section 12651, subdivision (a)(1), may arise absent an express false statement by the government contractor. (See *Shaw*, at p. 532 [reaching same conclusion regarding federal FCA]; *Pomona, supra*, 89 Cal.App.4th at p. 802 ["[T]he claim itself need not be false but only need be underpinned by fraud."].)

The first critical issue in this case is whether a request for payment under a contract includes an implied certification of compliance with contractual requirements that, if false and fraudulent, can form the basis for a CFCA action. The *Shaw* court considered this question directly in the federal context. There, one of the defendants was a government photography contractor that, among other things, failed to comply with a provision of its contract requiring it to recover silver from used laboratory chemicals. (*Shaw, supra*, 213 F.3d at p. 523.) Like Laidlaw in the present case, the defendant in *Shaw* argued that "an invoice, submitted after the violation of a contractual provision, cannot constitute the knowing presentation of" a false claim. (*Id.* at p. 531.) The *Shaw* court rejected that argument and accepted an argument made by the United States, appearing as amicus curiae, that "when [the defendant] submitted its monthly invoices, it impliedly certified that it had complied with the silver recovery provisions in the contract; because [the defendant] was being paid not only for photography services but also for environmental compliance, its false implied certification of compliance with the contract's silver recovery requirement gives rise to liability under the [federal] FCA." (*Ibid.*) In accepting that argument, *Shaw* relied on the distinction discussed above between the provision in the federal FCA prohibiting false claims and another prohibiting false statements used to support false claims. (*Id.* at pp. 531–532.) The court also discussed other federal case

law (*id.* at pp. 532–533) and pointed to language in a United States Senate committee report stating that a false claim " 'may take many forms, the most common being a claim for goods or services not provided, *or provided in violation of contract terms, specification, statute, or regulation.*' [Citation.]" (*Id.* at p. 531.)

Similar language appears in an analysis of the CFCA before its enactment, prepared by the Center for Law in the Public Interest (Center), which was the "source" of the bill in the California Assembly and also the drafter of the federal enactment. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1441 (1987–1988 Reg. Sess.) as amended Sept. 8, 1987, pp. 1, 5; see also *State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1230 [48 Cal.Rptr.3d 144, 141 P.3d 256] (*Harris*) [stating that the Center "participated in drafting both the current federal and California false claims statutes"]; *Altus, supra,* 36 Cal.4th at p. 1296 [describing the Center as the "principal drafter of the statute"].) The analysis, which was provided to the author of the bill and was before the Senate and Assembly Judiciary Committees, states "a false claim may take many forms, the most common being a claim for goods or services not provided, *or provided in violation of a contract term,* statute or regulation." (Center, Cal. False Claims Act Section-by-Section Analysis (1987) p. 4, italics added; see also *Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142 Cal.App.4th 636, 648 [47 Cal.Rptr.3d 832] [relying on the Center's analysis in interpreting the CFCA]; *Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 275 [116 Cal.Rptr.2d 823] [same].)[8]

Other federal decisions also provide support for an implied certification theory of CFCA liability. In *Ab-Tech Constr., Inc. v. U.S.* (1994) 31 Fed.Cl. 429, 434 (*Ab-Tech*), the court concluded payment vouchers submitted by a government contractor constituted "an implied certification" of the contractor's continuing adherence to the requirements for participation in a minority-owned business program. The court stated that the federal act "extends 'to all fraudulent attempts to cause the [g]overnment to pay out sums of money.' [Citation.]" (*Id.* at p. 433; see also *U.S. ex rel. Hendow v. University of Phoenix* (9th Cir. 2006) 461 F.3d 1166, 1170 (*Hendow*) [noting that the federal FCA is not limited to "facially false or fraudulent claims for payment"; rather, the federal FCA is " 'intended to reach all types of fraud, without qualification, that might result in financial loss to the [g]overnment' "]; *Pomona, supra,* 89 Cal.App.4th at p. 802.) Similarly, in *Hendow,* at pages 1168, 1176–1177, the court concluded the plaintiffs had stated a claim under the federal FCA where a university submitted requests for funds from the federal government despite being in violation of a provision of a program

---

[8] We have not located any other relevant California legislative history regarding Assembly Bill No. 1441 (1987–1988 Reg. Sess.).

agreement banning payment of school recruiters on a per-student-enrolled basis. In *Daff v. U.S.* (1994) 31 Fed.Cl. 682, 689, the court concluded that a government military contractor's requests for payment were false because they misled "the government into a belief that the contractor had fully complied with terms of the contract, when in fact it had not." There, the contractor concealed testing failures and "non-conforming soldering." (*Ibid.*) In *U.S. v. TDC Management Corp., Inc.* (D.C. Cir. 1994) 306 U.S. App.D.C. 286 [24 F.3d 292, 294, 296, 298], the court concluded a contractor could be liable under the federal FCA where it knowingly omitted from progress reports information concerning its noncompliance with the program it had contracted to implement.

In *U.S. ex rel. Fallon v. Accudyne Corp.* (W.D.Wis. 1995) 921 F.Supp. 611, 615, 620 (*Fallon*), it was alleged that a government contractor inadequately tested military hardware. The district court denied the defendant's motion for summary judgment, concluding "[i]f a contractor knowingly fails to perform testing as required by a contract, and tenders the untested goods, making a claim for full payment, it has surely submitted a false claim. Under such circumstances a false claim may arise from not advising of a failure to perform a material part of the contract." (*Id.* at p. 621; see also *U.S. ex rel. Holder v. Special Devices, Inc.* (C.D.Cal. 2003) 296 F.Supp.2d 1167, 1175–1177 (*Holder*) [violation of federal FCA may be based on false implied certification where contract required compliance with federal laws and specific regulations were incorporated into the contract]; cf. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.* (5th Cir. 2003) 336 F.3d 375, 383 [no violation of federal FCA where regulations allegedly violated were not referenced in contract].)[9]

---

[9] In *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.* (4th Cir. 2008) 525 F.3d 370, 376–377 (*Wilson*), the Fourth Circuit held that, to support liability under the federal FCA, the contractual provisions allegedly breached must be sufficiently precise that a false statement relating to compliance can be said to constitute an "objective falsehood." (See also *Harrison v. Westinghouse Savannah River Co.* (4th Cir. 1999) 176 F.3d 776, 789 (*Harrison*) [mere "allegations of poor and inefficient management of contractual duties" are "not actionable under the [federal FCA]"].) The *Wilson* case bears some superficial resemblance to the present case because there the allegations were that the defendant, a contractor in Iraq, falsely induced its contract with the government by promising to comply with "several general and relatively vague maintenance provisions, such as keeping vehicles 'in a safe operating condition and good appearance.' " (*Wilson*, at p. 377.) The plaintiffs alleged that the defendant failed to comply by, for example, failing to "change the oil or replace the fuel filters and damaged windshields of the convoy trucks." (*Id.* at p. 374.) The court concluded the allegations failed to show an "objective falsehood" because of the imprecise nature of the contractual requirements. (*Id.* at p. 377.) *Wilson* is distinguishable because, in the present case, plaintiffs, among other things, allege noncompliance with safety and pollution control standards referenced in the Contract, which provides the objectivity absent in *Wilson*. Accordingly, we need not and do not decide whether *Wilson's* construction of the federal FCA on this point is applicable to a CFCA claim. Arguably, the knowledge element of a CFCA claim addresses this issue, because a

The decision in *Pomona* also supports plaintiffs' position in this case. There, the defendant manufactured supply pipes and other water distribution parts that were sold to the City of Pomona (Pomona) for use in its municipal water system. (*Pomona, supra*, 89 Cal.App.4th at pp. 797–799.) The defendant represented in its catalogs and sales literature that its parts complied with specified national standards. (*Id.* at p. 797.) One of those standards required that all material coming into contact with potable water contain a specified combination of metals, in order to minimize corrosion. (*Ibid.*) Separate notations in the defendant's catalogs asserted compliance with that particular standard. (*Id.* at pp. 797–798.) Nevertheless, some of the parts purchased by Pomona were in fact made of an inferior metal combination. (*Id.* at p. 799.) The Court of Appeal concluded the plaintiffs had stated a claim under the CFCA. The representations in the catalog were intended to induce purchases and Pomona was deemed to have incorporated the catalog specifications into its order. (*Pomona*, at pp. 803–804.) When the defendant delivered nonconforming parts and sought payment, it constituted a false claim, both because the contract with Pomona was induced by a falsity and because the bill sought payment for a good which had not been provided. (*Id.* at pp. 804–805; see also *Rothschild, supra*, 83 Cal.App.4th at pp. 492, 500 [involving the same false claim].) In this case, the Complaint alleges that Laidlaw fraudulently failed to provide the level of services required by the Contract, which is analogous to the failure to provide the specified goods in *Pomona*. There is no reasoned basis to exclude the alleged fraud in this case from the scope of the CFCA simply because it relates to an ongoing service contract rather than a discreet purchase of goods. The alleged delivery of materially nonconforming services is an equivalently serious fraud.

Laidlaw argues a request for payment constitutes an implied certification of contract compliance giving rise to potential liability only where the contract requires such a certification as a prerequisite to payment. Laidlaw cites *U.S. ex rel. Hopper v. Anton* (9th Cir. 1996) 91 F.3d 1261 (*Hopper*), where it was alleged that the Los Angeles Unified School District accepted federal funding for special education programs but did not observe regulatory guidelines related to the program. (*Id.* at pp. 1264–1265.) The Ninth Circuit held the plaintiff could not show the school district had made a false claim for payment because the federal government did not require certification of compliance with the regulations as a prerequisite for obtaining the funding. (*Id.* at pp. 1266–1267.) However, *Hopper* did not consider whether a false implied certification relating to compliance with *express contractual* requirements could state a violation of the federal FCA.[10] In this case, the District's

---

plaintiff will have more difficulty showing knowledge of the falsity of an implied certification of compliance where the contractual requirement at issue is imprecise.

[10] The same is true of Laidlaw's other cases on this point, which do not discuss whether the relevant contract expressly required compliance with the particular laws or regulations violated

obligation to pay Laidlaw was conditioned on Laidlaw's "satisfactory" performance of services under the Contract, which included compliance with the maintenance requirements and specified environmental and safety regulations. (See Civ. Code, § 1439 ["Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself . . . ."].) The *Shaw* and *Holder* courts distinguished *Hopper* on the same grounds. (*Shaw, supra*, 213 F.3d at p. 533; *Holder, supra*, 296 F.Supp.2d at pp. 1173–1177.) As explained by the *Holder* court, "compliance with federal regulations was the *sine qua non* of payment because the contract specifically requires compliance." (*Holder*, at p. 1175.) And *Hopper* itself noted that actions have "been sustained under theories of supplying substandard products or services," which is essentially the claim in this case. (*Hopper*, at p. 1266.)[11]

■ Laidlaw asserts that plaintiffs' construction of the CFCA "would enable any private party to sue based on any purported breach of any public entity's contract." That plainly is not the case. First, because the CFCA achieves its ends by providing an incentive for whistleblowers to come forward and disclose evidence of fraud, the qui tam plaintiff must be the "original source" of the information underlying the suit. (See *Pacific Bell, supra*, 142 Cal.App.4th at pp. 746, 748, 755–756; § 12652, subdivision (d)(3)(A); see also *Harris, supra*, 39 Cal.4th at p. 1231.) Second, as discussed below, the implied certification of compliance with the breached contract provision "must be material to the government's decision to pay out moneys to the claimant." (*Hendow, supra*, 461 F.3d at p. 1172; see also *Pomona, supra*, 89 Cal.App.4th at p. 802.) And, third, the contractor must have the requisite knowledge, rendering the failure to disclose the contractual noncompliance fraudulent. (See *Shaw, supra*, 213 F.3d at p. 533 [the federal

by the defendants. (See *Mikes v. Straus* (2d Cir. 2001) 274 F.3d 687, 701–702 (*Mikes*); *U.S. v. Jamieson Science and Engineering, Inc.* (D.C. Cir. 2000) 214 F.3d 1372, 1374, 1376; *Harrison, supra*, 176 F.3d at p. 793; *U.S. ex rel. Swan v. Covenant Care, Inc.* (E.D.Cal. 2002) 279 F.Supp.2d 1212, 1221 (*Swan*); *Lum v. Vision Service Plan* (D.Hawaii 2000) 104 F.Supp.2d 1237, 1241–1242.)

[11] On this point, *Hopper* cites *U.S. v. Aerodex, Inc.* (5th Cir. 1972) 469 F.2d 1003, 1008, in which a government contractor delivered parts that failed to meet contractual specifications. It could be argued that plaintiffs here have stated a claim for relief simply by virtue of alleging that Laidlaw fraudulently sought payment for substandard services, without regard to the implied certification issue. (See *U.S. ex rel. Lee v. SmithKline Beecham, Inc.* (9th Cir. 2001) 245 F.3d 1048, 1053 (*SmithKline Beecham*) ["Neither false certification nor a showing of government reliance on false certification for payment need be proven if the fraud claim asserts fraud in the provision of goods and services."].) However, courts have construed that theory so narrowly that the claims in this case might not be covered, because the services provided by Laidlaw were not "worthless." (See *Mikes, supra*, 274 F.3d at p. 703 ["In a worthless services claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all."]; *SmithKline Beecham*, at p. 1053; *Swan, supra*, 279 F.Supp.2d at p. 1221.) Because we conclude the implied certification theory is viable, we need not decide whether this alternate theory is also available.

FCA "requires that the contractor knew, or recklessly disregarded a risk, that its implied certification of compliance was false"]; see also *Rothschild, supra,* 83 Cal.App.4th at p. 495.) "Innocent mistakes or negligence are not actionable . . . ." (*Hindo v. University of Health Sciences* (7th Cir. 1995) 65 F.3d 608, 613.)[12]

On the other hand, if this court were to accept Laidlaw's position, we would exclude a large category of fraud from the CFCA. Laidlaw does not deny that plaintiffs have alleged a fraudulent course of conduct, in that Laidlaw is alleged to have intentionally and secretly denied the District substantial benefits under the Contract. Nevertheless, under Laidlaw's interpretation, the CFCA would provide no remedy against government contractors that intentionally breach their contracts, often in a manner eluding detection. (See *Fallon, supra,* 921 F.Supp. at p. 621 [noting that it is particularly appropriate to impose liability where a contractor has concealed its failure to provide testing required under a contract, "since proper performance of such requirements is not generally apparent from the goods themselves"].) Under Laidlaw's interpretation, the CFCA would provide no incentive to whistleblowers to reveal the type of fraud alleged in this case, despite the fact that the "prospect of reward may be the only means of inducing such private parties to come forward with their information." (*Harris, supra,* 39 Cal.4th at p. 1231.)

■ It is reasonable for governmental entities to assume that contractors seeking payment are in compliance with the material terms of their contracts. If a contractual provision turns out to be unduly onerous or a contractor needs more time to comply, the contractor does not expose itself to liability under the CFCA if it informs the governmental entity of the problem and seeks an accommodation. But if that same contractor is aware of the noncompliance and chooses to seek payment without informing the government, then it is a fraud appropriately within the scope of the CFCA. To exclude such fraud would be contrary to this court's obligation to construe the CFCA " 'broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides.' " (*Pomona, supra,* 89 Cal.App.4th at pp. 801–802.) The act is " 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.' [Citation.]" (*Id.* at p. 802.)

---

[12] An additional safeguard against frivolous, opportunistic, or harassing suits is the requirement that the fraud allegations "must be pleaded with particularity. The complaint must plead ' "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." ' [Citations.] Allegations of the defendant's knowledge and intent to deceive may use conclusive language, however. [Citation.]" (*Pomona, supra,* 89 Cal.App.4th at p. 803.)

## III. *Materiality*

█ Laidlaw also contends that plaintiffs have not alleged facts showing the materiality of the implied false certification. The CFCA does not expressly require a showing of materiality to support the imposition of a statutory penalty for the submission of a false claim. Under section 12651, subdivision (a)(1), a person who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval" is "liable to the state or political subdivision for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) for each violation." (Stats. 2009, ch. 277, § 2.) Nevertheless, a number of courts have concluded that the federal FCA contains an implicit materiality requirement, because it would not effectuate the intent of the statute to impose a penalty based on a falsity which would not have influenced the public entity's payment decision. (See, e.g., *Hendow, supra*, 461 F.3d at p. 1172 [the alleged falsity "must be material to the government's decision to pay out moneys to the claimant"]; *Harrison, supra*, 176 F.3d at p. 785 ["Liability under each of the provisions of the [federal FCA] is subject to the further, judicially-imposed, requirement that the false statement or claim be material."]; *U.S. ex rel. Berge v. Trustees of Univ. of Ala.* (4th Cir. 1997) 104 F.3d 1453, 1460 (*Berge*) ["the materiality of the false statement turns on 'whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action' "]; *Ab-Tech, supra*, 31 Fed.Cl. at p. 434 [false statement of compliance must be "critical to the decision to pay"]; see also *Mikes, supra*, 274 F.3d at p. 697 ["A materiality requirement holds that only a subset of admittedly false claims is subject to [federal FCA] liability."].) As the court explained in *Mikes*, at page 697, "[s]ince the [federal FCA] is restitutionary and aimed at retrieving ill-begotten funds, it would be anomalous to find liability when the alleged noncompliance would not have influenced the government's decision to pay."[13]

In California, the *Pomona* court adopted the test for materiality described in *Berge, supra*, 104 F.3d at pages 1459–1460; that is, an alleged falsity satisfies the materiality requirement where it has the " ' "natural tendency to influence agency action or is capable of influencing agency action." ' [Citation.]" (*Pomona, supra*, 89 Cal.App.4th at p. 802.) The parties agree that test applies in this case.[14]

---

[13] The *Mikes* court ultimately did not rest its decision on the materiality requirement, instead concluding "that not all instances of regulatory noncompliance will cause a claim to become false." (*Mikes, supra*, 274 F.3d at p. 697.)

[14] Effective January 1, 2010, the Legislature amended the CFCA to provide that, for purposes of the CFCA, " 'Material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services." (§ 12650, subd. (b)(4); Stats. 2009, ch. 277, § 1.) The Legislature also amended section 12651,

In arguing the Complaint does not satisfy the materiality requirement, Laidlaw points out that there are no allegations that the District inquired about maintenance of Laidlaw's buses or the other contract terms at issue in determining whether to pay on the invoices. However, plaintiffs allege in the Complaint that the Contract specifies that the District's payments are " 'for services *satisfactorily performed* by the [c]ontractor after receipt of properly documented invoices.' " Plaintiffs further allege that Laidlaw's invoices impliedly certified compliance with the material terms of the Contract, that the terms violated were material, and that the District was unaware of the falsity of Laidlaw's implied certification, resulting in a loss of District funds. Plaintiffs' allegations are adequate to survive a demurrer. Under the case law discussed above, Laidlaw's implied certification that it had satisfactorily performed its material obligations under the Contract, including provisions designed to protect the health and safety of the student population, had a " ' "natural tendency" ' " (*Pomona, supra,* 89 Cal.App.4th at p. 802) to cause the District to make payments it would not have made had it been aware of Laidlaw's noncompliance. The allegations here are similar to those that were adequate to survive a demurrer in *Pomona,* where the plaintiffs alleged the false representations in the defendant's catalogs induced Pomona to purchase parts that did not comply with the listed specifications. (*Pomona,* at p. 803.) The court held that those allegations, "coupled with allegations of the inferior durability of lesser metal fittings and the higher lead content [of the parts received], establishes the materiality of the representations." (*Ibid.*)

In this case, plaintiffs' materiality showing is strengthened by various provisions of the Contract (see fn. 5, *ante,* at p. 444) that reflect the District's concern with bus maintenance and safety, which are at issue in this case. For example, plaintiffs allege in the Complaint that the District was entitled under the Contract to liquidated damages of $100 per day, per bus for Laidlaw's failure to properly equip the buses. Article 25 of the Contract specifies that such liquidated damages assessments "shall be deducted by the District in the payment to [Laidlaw] for that month." The inclusion of particular contractual provisions within a liquidated damages provision of this nature indicates the

---

subd. (a)(2) (Stats. 2009, ch. 277, § 2), to specify that a person violates the CFCA who "[k]nowingly makes, uses, or causes to be made or used a false record or statement *material* to a false or fraudulent claim." (Italics added.) A committee analysis explained that the definition of material "ensures that only those false statements designed to influence payment of a false claim are subject to the CFCA." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1196 (2009–2010 Reg. Sess.) as amended June 26, 2009, p. 9.) The committee analysis also explained that the bill was in response to a United States Supreme Court decision, *Allison Engine Co. v. United States ex rel. Sanders* (2008) 553 U.S. 662 [170 L.Ed.2d 1030, 128 S.Ct. 2123], which involved the federal FCA counterpart to section 12651, subdivision (a)(2). (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1196, *supra,* at p. 7.) Although the Legislature did not add the word "material" to section 12651, subdivision (a)(1), we do not construe the 2009 amendments as a limitation on the materiality requirement as described in *Pomona, supra,* 89 Cal.App.4th at page 802. Neither do the parties in this case make such a suggestion.

special importance of the provisions to the contractee.[15] Article 12 of the Contract states that "It is the intent of the District to obtain the best quality transportation available and which incorporates the highest standards of performance and safety for the educational and personal well-being of the students." In article 8 of the Contract, the District reserved the right to inspect Laidlaw's buses and to require replacement of unfit vehicles. Finally, the District's resolution regarding adoption of the Contract states that "[t]he award of the new bus contract will provide replacement for the District's aging bus fleet, conformance to 2007 air quality emissions standards and the inclusion of safety lap belts on the entire bus fleet." (See fn. 5, *ante*, at p. 444.) We conclude that plaintiffs have adequately alleged that Laidlaw's false implied certification of compliance with the Contract provisions at issue in the present case was material to the District's decision to make the payments as requested.[16]

Our conclusion that the allegations in the Complaint are sufficient to withstand a demurrer does not mean that every breach of a contract term that is in some sense "material" necessarily satisfies the materiality requirement for a CFCA claim. That is, a false implied certification relating to a "material" contract term may not always be "material" to the government's decision to pay a contractor. Materiality is a mixed question of law and fact (*Pomona, supra*, 89 Cal.App.4th at p. 802), and a showing in a motion for summary judgment or at trial that the alleged breach would not have affected the payment decision will defeat a CFCA claim. The decision in *Berge, supra*, 104 F.3d 1453, the source of the "natural tendency" test adopted by *Pomona*, is instructive. There, the defendants appealed from denial of their motion for judgment as a matter of law following a jury verdict finding them liable under the federal FCA. (*Berge*, at p. 1455.) The defendants were funded by the National Institutes of Health (NIH) to conduct research regarding a common cause of birth defects. (*Ibid.*) The qui tam plaintiff alleged the defendants had made false statements to the NIH in annual progress reports including, among other things, assertions about the amount of data that had been computerized. (*Id.* at p. 1456.) The Fourth Circuit reversed denial of the motion for judgment because there was no substantial evidence from which a reasonable jury could conclude the defendants' errors and omissions "were materially capable of influencing" the government's funding decision. (*Id.* at pp. 1461–1462.) The court pointed out that the program officer with responsibility for the grant testified that "the principal purpose of the project was the

---

[15] We do not, however, mean to suggest that breaches of contractual provisions not included within the liquidated damages provision cannot satisfy the materiality requirement.

[16] In a petition for rehearing, Laidlaw contends that, in order to satisfy the materiality requirement for an implied certification claim, a plaintiff must plead facts regarding how the relevant government entity monitored contract performance. Laidlaw cites to nothing in the CFCA supporting its position, and Laidlaw cites to no cases imposing such a pleading requirement.

collection of data, not its computerization." (*Id.* at p. 1460; cf. *Fallon, supra,* 921 F.Supp. at p. 621 [pointing out that the performance testing requirement at issue was a "critical element" of the contract].)

In this case, some of the alleged contractual breaches relate to the safety of Laidlaw's buses for the District's student population, such as the allegation that Laidlaw failed to repair buses that "allowed diesel exhaust into the passenger compartment." Such allegations are clearly of sufficient seriousness to satisfy the materiality element at the demurrer stage. Although we believe the materiality requirement is a meaningful limit to the scope of liability under the CFCA, we need not further delineate the parameters of the requirement in this decision.

## IV. *Causation*

Laidlaw also contends that plaintiffs have not alleged facts showing "causation." However, the causation requirement only applies to plaintiffs' claim for damages, not to plaintiffs' claim that Laidlaw is liable for statutory penalties under the CFCA. Under section 12651, subdivision (a), a person who presents a false claim is liable for "three times the amount of damages that the state or political subdivision sustains *because of* the act of that person." (Italics added.) Such a person is *also* liable for penalties, but the penalty provision does not require a showing that the violation caused damages to the public entity. (See *Harrison, supra,* 176 F.3d at p. 785, fn. 7 [to impose liability under the federal FCA, "there is no requirement that the government have suffered damages as a result of the fraud"]; *Ab-Tech, supra,* 31 Fed.Cl. at pp. 434–435 [denying request for damages but imposing penalty]; Center, Cal. False Claims Act Section-by-Section Analysis, *supra,* p. 7 ["[n]o proof of damages nor showing of payment on the claim is required" for liability for a false claim].) In any event, plaintiffs have adequately alleged that the District suffered damages because of Laidlaw's implied false certifications. The Complaint expressly so alleges, and the allegations regarding the liquidated damages provision (see, *ante,* at p. 455) demonstrate one specific way in which the District was damaged by the alleged falsities. That is, if the alleged contractual violations had been disclosed, the District would have been entitled to liquidated damages for at least some of the alleged instances of noncompliance.

Because the Complaint states a cause of action under section 12651, subdivision (a)(1), the trial court erred in sustaining Laidlaw's demurrer.

## DISPOSITION

The trial court's dismissal of the Complaint's first cause of action for violation of section 12651, subdivision (a)(1), is reversed, and the matter is remanded for further proceedings consistent with this decision. Plaintiffs are awarded their costs on appeal.

Jones, P. J., and Needham, J., concurred.

A petition for a rehearing was denied March 25, 2010, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 12, 2010, S181584.