Filed 6/15/16  Riverside County Transp. Comm. v. Holgate CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIVERSIDE COUNTY TRANSPORTATION COMMISSION, | |
| Plaintiff and Appellant, | E061726 |
| v. | (Super.Ct.No. RIC10016058) |
| STEPHEN HOLGATE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

AlvaradoSmith, Keith E. McCullough, Kevin A. Day and William M. Hensley for Plaintiff and Appellant.

Law Offices of Charles D. Nachand and Charles D. Nachand for Defendants and Respondents.

1

Plaintiff and appellant the Riverside County Transportation Commission (RCTC) appeals the grant of summary judgment in favor of defendants and respondents Stephen Russell Holgate; Shelbran Investments, L.P.; The Shelbran Company, Inc; Stephen Holgate aka Steve Holgate, as Trustee of The Shelbran Co., Inc. Defined Benefit Plan aka The Shelbran Company Defined Pension Plan; Steven Holgate and Karen Holgate as Trustees of the Steven Holgate and Karen Holgate Family Trust; and Jan Holgate.[1] The dispute involves the sale of approximately 37 acres of property (Property) in the City of San Jacinto (City) to the RCTC by Holgate in 2007. Stephen advised the RCTC that it was his understanding the Property was not subject to a Transportation Uniform Mitigation Fee (TUMF). The TUMF ordinance was enacted in June 2003; it requires developers to pay fees to fund transportation improvements. Stephen provided information that he had a vested parcel map that was complete prior to the enactment of the TUMF ordinance. The RCTC hired an appraiser and that appraiser confirmed with an official with the City that the Property was exempt from the TUMF. The RCTC estimated that just compensation for the Property included an additional $5,555,355 for the TUMF exemption.

After the RCTC purchased the Property, Stephen was indicted for illegal campaign contributions and bribing City officials. In 2010, an attorney employed by the RCTC revisited the purchase of the Property. The attorney examined language in Government

---

[1] When we refer to "Holgate" in the opinion, we are including all of the defendants. Jan Holgate and Stephen Holgate will be individually referred to by their first names for ease of reference; no disrespect is intended.

2

Code[2] section 66474.2[3] pertaining to vesting of parcel maps and opined that in fact the Property could have been subject to the TUMF at the time it was purchased by the RCTC. The RCTC sent notice to Holgate that a false claim was submitted under California's False Claim Act (CFCA) and demanded the return of $5,555,355. Holgate refused to return the money.

RCTC filed a complaint against Holgate alleging causes of action under the CFCA, which allows a public entity to bring an action for civil penalties and damages against a person who either intentionally or inadvertently submits a false claim (§ 12651, subd. (a)(1)-(3), (8)), conversion and equitable trust. Holgate filed motions for summary judgment on the grounds that a claim had not been submitted and, even if a claim was submitted, it was not false. The trial court granted Holgate's summary judgment motions.

The RCTC claims on appeal that there were triable issues of fact as follows: (1) did Holgate shift the burden as to the falsity of the claim without ever raising the validity of the TUMF exemption under section 66474.2, subdivisions (a) or (b); (2) did the trial court err when it determined that Holgate's claim for the five million value increase was based upon a nonexistent TUMF exemption and no false claim was submitted; (3) did the trial court err by determining that the TUMF exemption would not

---

[2] All further statutory references are to the Government Code unless otherwise indicated.

[3] Section 66474.2 pertains to the vesting of parcel maps and the application of current ordinances to the approval of the map.

3

actually be applied by the City; (4) does section 12651, subdivision (a)(8) require the submitting party to return the money if the initial submission was inadvertent; and (5) did triable issues of material fact exist as to whether Holgate intentionally submitted a false claim based upon Stephen's criminal case and guilty plea in that case.

We conclude the motions for summary judgment were properly granted. The RCTC failed to present evidence to survive summary judgment that the claim the Property was exempt from the TUMF was intentionally or inadvertently false.

### FACTUAL AND PROCEDURAL HISTORY

A. <u>FACTUAL HISTORY</u>

The following facts are taken from the undisputed material facts agreed to by Holgate and the RCTC, and the additional disputed facts presented by Holgate, and by the RCTC.

The RCTC and Holgate agreed to the following facts unless otherwise indicated: The RCTC was a public agency located in Riverside County and was a political subdivision. Stephen was the president of The Shelbran Co., Inc. Shelbran Investments, L.P., was a California limited partnership and The Shelbran Co., Inc., was the general partner in Shelbran Investments, L.P. Stephen Holgate and Karen Holgate Family Trust was the limited partner in Shelbran Investments, L.P. RCTC purchased the Property, which consisted of 36.77 acres, from Holgate for $22,613,000. The Property was obtained by RCTC as part of the development of the Mid County Expressway Project.

The TUMF ordinance was adopted by the City on April 3, 2003, at a San Jacinto City Council (City Council) meeting; it was first introduced at a City Council meeting on

4

March 20, 2003. The notice of hearing was published in the Riverside Press-Enterprise newspaper on March 8, 2003. The fee was to be assessed against the developer on a per square foot basis.

Holgate submitted the Vesting Parcel Map 31281 (the Map) to the City on May 2, 2003. The Map was submitted in May 2003 in an effort to avoid the TUMF on the property covered by the Map, which included the Property. The application for the Map was deemed complete on May 30, 2003. The TUMF ordinance became effective on June 3, 2003. Holgate obtained a "Development Agreement" for the Map from the City on May 4, 2006. The Development Agreement extended the Map for 10 years. There was no mention of the TUMF exemption in the Development Agreement.

Holgate received an advisory letter from the law firm of Rutan and Tucker on July 20, 2006, that the Property was exempt from the TUMF because the ordinance was adopted after the Map was completed and the Development Agreement preserved the exemption. In March 2007, the RCTC appraised the value of the Property at $15,056,000. There was no mention of the TUMF exemption. This offer was given to Holgate.

Stephen met with RCTC and indicated the offer was too low because of the TUMF exemption. Holgate disputed this fact and stated Stephen advised the RCTC that the offer was too low based on comparable sales and only "asked" if the RCTC was aware of the TUMF exemption. Holgate was instructed to work with RCTC's appraiser, Sharon Hennessey. Holgate submitted a document entitled "Value Summary" for the Property to Hennessey. It proposed an increase of $3.47 per square foot to the first offer from the

RCTC. Holgate disputed that the increase was all based on the TUMF exemption; the increase also included other fees.

Hennessey was hired by RCTC to do the appraisal on the Property. Hennessey contacted the City's Planning Director Asher Hartel and he confirmed the Property was exempt from the TUMF. Hennessey reappraised the property at $22,613,000. The RCTC offered to purchase the property for $22,613,000 and Holgate accepted the offer.

On June 9, 2010, the RCTC sent a letter to Holgate claiming a CFCA violation. The RCTC sought the return of $5,555,355. The RCTC claimed that Hennessey used the Value Summary to reach the conclusion in the second appraisal that the Property was worth $22,613,000. Holgate disputed the allegation stating that the RCTC conducted its own independent investigation of the TUMF exemption and based the revised appraised value on that investigation. Stephen had been involved in another development agreement for other property in which a TUMF exemption was specifically included in the agreement.

Holgate also presented the following disputed facts: The "Purchase and Sale Agreement" signed by the RCTC included that the RCTC would do its own investigation, and that the Property was sold "as is." Tim Hults, the current city manager, had been the assistant city manager when the Property was purchased by the RCTC. At that time, the city manager, John Bollinger, agreed that the Property was not subject to the TUMF ordinance. Hults also believed the Property was not subject to the TUMF at the time the Property was purchased by the RCTC.

6

Holgate made a counteroffer of $25,114, 675 in the Value Summary. The Property was reappraised by Hennessey, and she came to the value of $22,613,000, which was the counteroffer made by the RCTC, and accepted by Holgate.

Robert Shea Purdue performed an appraisal for the RCTC for approximately 24 acres adjacent to the Property. That property was also subject to the Map. Purdue contacted Blaine Womer, a civil engineer employed by Holgate, and Womer confirmed the Property would be exempt from the TUMF. Purdue also investigated all of the property subject to the Map, and concluded it was all exempt from the TUMF. Other officials from the City confirmed that the Map was not subject to the TUMF.

Stephen was charged in a 155-count indictment for bribing City Council members and making illegal campaign contributions. He pleaded guilty to three counts of making illegal campaign contributions, and bribing to influence a public official. Holgate denied that these convictions had any connection with the Property. Holgate did not want to sell the Property to RCTC but was forced to sell it in order for the RCTC to develop the Mid County Expressway Project. At all times when the Property was being purchased by the RCTC, Holgate's attorneys and officials from the City all agreed that the Property was exempt from the TUMF.

The RCTC presented the following disputed facts: The Value Summary was made during the negotiations and included the TUMF exemption. The RCTC insisted that the Value Summary was a claim for more money from RCTC. The RCTC was required to pay "just compensation" for the Property based on the appraised value. Stephen and Jan sent the Value Summary to Hennessey for the appraisal.

7

Purdue only became aware of the TUMF exemption from Womer, who was Holgate's engineer, and Jim Ayres, who had been the mayor of the City. Holgate pleaded guilty to bribery of Ayres. It was during the time period the Development Agreement for the Property was approved.

The RCTC characterized the Value Summary as a demand for payment. Hennessey verified the factual submission of the Map and the Development Agreement. The RCTC insisted that exemption for the TUMF was not verified by legal review or legal opinion.

The RCTC disputed that the second appraisal included vested fee exemption savings as determined by Hennessey; it was based on statements made by Holgate and Womer.

B.      PROCEDURAL HISTORY

1.      *COMPLAINT*

The RCTC filed its first amended complaint on December 17, 2012. They alleged in their first cause of action a violation of section 12651, subdivision (a)(8), the inadvertent presentation of a false claim. They alleged that Holgate had presented a false claim by way of the July 20, 2006, letter from Rutan and Tucker, Holgate's counsel, and the Value Summary, advising the RCTC that the Property was exempt from the TUMF. Thereafter, on June 9, 2010, the RCTC contacted Holgate that it had recently discovered that that there was no TUMF exemption on the Property. The RCTC sought return of the $5,555,355 it claimed it overpaid for the Property. There was no response by Holgate. The RCTC was entitled to the return of the money and damages.

The second cause of action was for receipt of fraudulent development approvals to support a false claim for payment in violation of section 12651, subdivision (a)(1)-(3). The RCTC referred to Stephen being named in the criminal matter of *The People of the State of California v. Stephen Russell Holgate, et. al.* Riverside County criminal case No. RIF153642. Stephen was accused of making unlawful campaign contributions to individuals serving as members of the City Council. He was also accused of giving a bribe or offering a bribe to a member of the City Council to influence an official vote. According to the RCTC, Holgate insisted that since they filed the parcel map for the Property on May 30, 2003, the TUMF ordinance, adopted in June 2003, did not apply to the Property. The RCTC contended that Holgate improperly secured approvals, entitlements and agreements from the City Council that were used to create, drive maintain and/or prolong the TUMF exemption.

RCTC alleged that the City Council amended Chapter 16.14 in March 2006 to allow a developer to extend development rights so the Map would remain in effect. Holgate obtained the Development Agreement, which extended the TUMF exemption. As a result, they were able to demand payment for the TUMF exemption from RCTC, which was a false claim.

In the third cause of action, the RCTC alleged that Holgate intentionally presented a false claim pursuant to section 12651, subdivision (a)(1)-(3). The RCTC alleged that Holgate knowingly submitted a false claim by advising the RCTC that the Property was exempt from the TUMF.

9

In the fourth case of action, the RCTC alleged conversion of funds because the $5,555,355 rightfully belonged to the RCTC and Holgate had taken the funds. The fifth cause of action alleged constructive trust/equitable lien for Holgate fraudulently obtaining $5,555,355 from the RCTC. Both of these claims related back to Holgate submitting a false claim.

RCTC attached three exhibits to the Complaint. The first exhibit was the Value Summary sent by Jan to Kim Reed, who was a consultant employed by RCTC. It showed that the RCTC's first appraisal was in the amount of $9.40 per square foot. The Value Summary included an additional $3.47 per square foot fee exemption value. The estimate of value of the Property was $25,114,675. The second exhibit was the letter from Rutan and Tucker to Holgate. In it, Philip D. Kohn, the attorney advising Holgate, stated that the Development Agreement obtained by Holgate in 2006 extended the rights under the Map. Kohn advised Holgate that as long as the Development Agreement was in effect, the Property was not subject to the TUMF. The third exhibit was the letter sent to Holgate on June 9, 2010, from the RCTC advising him that under section 66474.2, subdivisions (b) and (c), the Property was subject to the TUMF when it was sold to RCTC. RCTC demanded that Holgate return the $5,555,355.

### 2. *RCTC'S MOTION FOR SUMMARY ADJUDICATION FILED ON THE FIRST CAUSE OF ACTION AND RULING*

The RCTC moved for summary adjudication of the first cause of action, the inadvertent false claim action under section 12651, subdivision (a)(8). The RCTC insisted that under section 66474.2, subdivisions (b) and (c), the Map was subject to the

10

TUMF because the TUMF ordinance was in the process of being adopted at the same time as Holgate sought the Map. As such, there was no disputed issue of material fact. The claim by Holgate that the Property was exempt from the TUMF was a false claim.

The trial court heard the motion for summary adjudication on May 3, 2013. After a hearing on the RCTC's motion for summary adjudication, the trial court denied the motion for summary adjudication. The trial court ruled, "the Court finds that [RCTC] has failed to meet its initial burden."

3.    *SUMMARY JUDGMENT MOTIONS FILED BY HOLGATE*

Holgate filed several motions for summary judgment in November 2013.[4] Holgate argued that the RCTC's causes of action were based on Holgate submitting a claim, and that the claim was false, but there was no evidence presented to support these allegations. As such, summary judgment was appropriate. Holgate contended that the Value Summary was not a claim, because it was merely a counteroffer to the offer to purchase made by the RCTC. Further, the RCTC agreed that the TUMF did not apply. Since the offer made to Holgate was independently determined by the RCTC, by its appraiser and attorneys, Holgate could not be found to have submitted a false claim.

Holgate alleged that the RCTC had investigated the TUMF exemption on its own and determined it did not apply. There was no false claim. Further, the Purchase and

---

[4] There were several summary judgment motions filed for the different entities and Jan but they were essentially the same motion. In the opinion we are referring to the summary judgment motions filed on behalf of Stephen Holgate aka the Shelbran Company Defined Pension Plan, Stephen Holgate and Karen Holgate as Trustees of the Stephen Holgate and Karen Holgate Family Trust, Shelbran Investments, L.P., and the Shelbran Company, Inc.

11

Sale Agreement stated that the RCTC was buying the Property "as is," and the RCTC had signed the Purchase and Sale Agreement, which provided that they had fully investigated all of the zoning and planning. Holgate alleged that the RCTC had done its own evaluation of the Property. Further, the RCTC instructed Stephen to submit any valuation of the property to the appraiser, Hennessy, rather than directly to the RCTC.

Holgate alleged that the RCTC had purchased another piece of property that was subject to the same Map. Holgate had sold that Property to another party, who sold it to the RCTC. The appraisal for that property, which was accepted by the RCTC, included that the property was exempt from TUMF. The appraiser looked at all of the other properties. It was determined by the independent appraiser that all of the properties, including the Property, were exempt from the TUMF.

Holgate stated that the Value Summary was not a claim, as the RCTC directed it to be submitted. Further, Holgate alleged that the TUMF did not apply because section 66474.2 was discretionary as it provided that the City *may apply* an ordinance that was adopted simultaneously with a vesting parcel map; it was not mandatory. There was no allegation in the Complaint that the City had sought to apply the TUMF. Holgate argued that the statements by the City at the time of the purchase of the Property showed that the City did not intend to apply the TUMF. The fact the RCTC believed that the TUMF applied was not enough to support its claim. Further, there was no claim at all because the RCTC purchased the Property "as is." The RCTC performed its own study and determined the TUMF did not apply.

12

Holgate also alleged as to the second cause of action that Stephen had been indicted on 155 counts in the criminal case, but 145 were dismissed. None of the acts pertained to the sale of the Property to the RCTC. In fact, Stephen did not want to sell the Property to the RCTC but the RCTC needed it as part of the Mid County Expressway Project. There was no evidence that Stephen tried to influence any City Council member in regards to the Property.

Further, Holgate did not knowingly present a false claim to the RCTC. Holgate's own attorney and officials from the City all agreed that the TUMF did not apply. The RCTC presented no new facts that the fee applied. Further, as to the second and third causes of action, Holgate did not knowingly submit a false claim. The fourth cause of action failed because there was no false claim, so there could be no conversion. There was no false claim because the Value Summary was requested by the RCTC and was a counteroffer, not a claim; Stephen followed the RCTC's directions in submitting documents; the fee had not been applied by the City; and the Property was purchased "as is." There was no conversion.

Holgate lodged several exhibits. This included the Purchase and Sale Agreement. It included a clause that the sale was "as is." Further, the seller made no representations as to the laws applying to the Property.

Stephen also submitted his own declaration. He proclaimed he knew nothing about the possibility that the TUMF could potentially have applied to the Property until the letter from RCTC in 2010. He relied on his attorneys that the TUMF exemption applied to the Map. He was advised by RCTC employee Min Saysay that he was to

13

submit all values to the appraiser, Hennessey, directly, and not to contact the RCTC as to the amount required for the Property. He never submitted a claim directly to the RCTC. Jan submitted all documents directly to Hennessey. The RCTC then responded with a new counteroffer based on its own determination of just compensation.

Holgate also attached an appraisal from Robert Shea Purdue. It was an appraisal of 24.17 acres owned by the McCleish Group. In the appraisal, it was stated, "Subject property is part of Vesting Parcel Map 31281, which makes the subject exempt from local agency fees imposed after the approved tentative parcel map, which includes TUMFs, according to Blaine Womer, Civil Engineer." The RCTC was the buyer.

Purdue's deposition was attached. He acknowledged doing an appraisal on a property that was subject to the same Map as the Property. It was for the development of the Mid County Expressway Project. Stephen informed Purdue that the property he was appraising was TUMF exempt. Purdue also relied on the Rutan and Tucker letter. Purdue met with Womer, who confirmed the exemption. Perdue sought confirmation of the TUMF because he did not see the exclusion in the Map or Development Agreement. Ayres advised Purdue that the property he was appraising was exempt because of the Map.

Holgate also attached Hennessey's deposition and her second appraisal of the Property. Hennessey met with Hartel, the City's Planning Director, when preparing her second appraisal for the Property. Hartel advised her that the Map was deemed complete as of May 2003, and the fees were locked in on that date. Hartel confirmed the TUMF exemption and the Development Agreement extended the exemption. Specifically, the

14

second appraisal stated that according to Hartel, the Map "was deemed complete on May 30, 2003, and approved on October 9, 2003. This vesting tentative parcel map locks in the City development fees, for this property, to what they were as of May 2003, when the map was deemed complete. This is very significant because on June 1, 2003, Transportation Uniform Mitigation Fee (TUMF) came into effect." Holgate entered into the Development Agreement extending the map for 10 years on June 27, 2006. Womer calculated the savings at $5,555, 355 for all of the fees. The Development Agreement was also included as an exhibit.

Holgate also attached the deposition of Hults. In 2007, when the deal was being negotiated, Ballinger was the city manager. Hults spoke with Ballinger about the TUMF exemption. It was the City's determination, affirmed by their city attorney, that the Property was exempt. No one had ever informed Hults that the Property was not exempt from the TUMF.

The second offer to purchase the Property was attached. RCTC represented that it had made its own determination that the fair market value of the Property was $22,613,000. Holgate also attached the letter from Rutan and Tucker, which had been attached to the Complaint.

4.  *RCTC'S OPPOSITION TO THE MOTIONS FOR SUMMARY JUDGMENT*

The RCTC filed its oppositions to the summary judgment motions on January 7, 8 and 9, 2014. The RCTC alleged that Holgate failed to address the falsity of the claim that the Property was exempt from the TUMF, i.e. had not addressed section 66474.2,

15

subdivisions (b) and (c). The RCTC criticized Holgate for focusing on not having filed a claim rather than addressing its claim that section 66474.2, subdivisions (b) and (c), which affirmed that the TUMF was applicable to the Property. The RCTC contended that even if the employees of the City negligently reviewed the statutory language and determined the Property was exempt from the TUMF, that did not entitle him to keep the money and it qualified as an inadvertent false claim.

The RCTC insisted that Holgate presented a claim to them for payment in the form of the Value Summary. The threshold issue for the entire case was whether the Property was exempt from the TUMF. The RCTC argued that Holgate had to present evidence that the Property was exempt from the TUMF.

The RCTC argued that Holgate's Map application was complete on May 30, 2003. The TUMF ordinance was adopted on April 3, 2003, and was published in the Press-Enterprise newspaper on March 28, 2003. It was effective June 3, 2003. According to section 66474.2, subdivision (b), the TUMF ordinance could be applied to the Map because the ordinance was in the process of being adopted before the Map was deemed complete.

The RCTC insisted that pursuant to subdivisions (b) and (c) of section 66474.2, the Property was in fact not exempt from the TUMF. The RCTC insisted that Holgate could not negate the causes of action. The RCTC argued the investigation by its officials and officials at the City did not negate the false claim because the RCTC had no duty to investigate the claim. Further, the RCTC argued that despite buying the Property "as is," that did not negate a claim under CFCA.

16

The RCTC also objected to the claim that the City never assessed the TUMF. According to the RCTC, the TUMF was to be collected from a private developer upon issuance of a certificate of occupancy or at the time of the final inspection. The RCTC admitted in their opposition that the "RCTC acquired the Subject Property for public transportation purposes, which are expressly exempt from TUMF." Nonetheless, in assessing the value of the Property at the time it was purchased the RCTC argued that, without an express exemption from the City, the Property was subject to the TUMF. Further, the RCTC criticized Holgate's contention that the City would not impose the fee even though legally required to impose the fee.

The RCTC also alleged that Stephen pled guilty to bribing Ayers on matters before the City Council. The RCTC insisted this created a "major disputed issue of material fact" because the guilty plea covered the period of May 2006, when he obtained a Development Agreement that extended the Map.

The RCTC also referred to another development agreement that Holgate obtained from the City. In that agreement, Holgate got a specific written TUMF exemption from the City. The RCTC alleged, "Defendants know what is necessary to actually secure a valid TUMF exemption, and their deviation from that procedure here is further evidence of their false claim."

The RCTC filed a request for judicial notice of the criminal case filed against Stephen and his plea agreement. The indictment alleged over 100 counts against him and, relevant here, numerous counts involving Ayres. Stephen pled guilty on August 26, 2011. Included in his guilty plea was that he admitted making illegal campaign

17

contributions to Ayres.  He also admitted to bribing City Council members on matters before the council.  The RCTC objected to Stephen's declaration and testimony from Hults submitted with the summary judgment motions as hearsay and irrelevant.

The RCTC included several of the exhibits already filed with the summary judgment motions, including, (1) the Purchase and Sale Agreement; (2) Stephen's deposition, in which he (a) advised Reed of the TUMF exemption, (b) Reed told him to send the information to Hennessey, and (c) continued to deny the TUMF applied to the Property; (3) the Rutan and Tucker letter; (4) the second appraisal; (5) the Development Agreement; and (6) Purdue's deposition.

The RCTC attached the TUMF ordinance.  According to the ordinance, the fee was to be imposed at the time a certificate of occupancy was issued or upon final inspection.  He also attached the publication of the TUMF ordinance in the Press-Enterprise newspaper.  There was also a letter from the City to Stephen that the Map was complete on May 30, 2003.  Additionally, the notification letter from the City that the Map was approved on October 9, 2003.  The RCTC also attached the original offer from RCTC to Holgate in the amount of $15,056,000, which was based on the first appraisal.

The RCTC also attached the second offer.  It stated, "RCTC had determined the amount of just compensation for the property identified in the attached legal description to be the sum of $22,613,000 . . . .  [¶]  . . . The basis for that determination is explained in the attached appraisal summary statement."  The RCTC attached Hennessey's declaration prepared for the motion for summary adjudication.  She declared she used the Value Summary and Development Agreement to reach the increased value.  Finally, the

18

RCTC included the development agreement for another property in which Holgate was involved. Included in the language of that agreement was that the project would not be subject to a TUMF.

### 5. *HOLGATE'S REPLIES TO RCTC'S OPPOSITIONS*

Holgate filed replies to the oppositions. Holgate argued that there was no showing of a false claim submitted to RCTC. The fourth and fifth causes of action were dependent upon a false claim. Holgate stated that the Value Summary was not a claim because it was not paid by the RCTC as it was submitted. Further, the counteroffer was to be evaluated by the RCTC. All the evidence showed that all of the parties believed that the TUMF exemption applied to the Property at the time the RCTC had purchased the Property. No law had changed. The only evidence presented by the RCTC was speculation by one attorney that it would have applied. Further, Purdue used the same information on another appraisal to determine the exemption applied.

The decision to purchase the Property was based on Hennessey's calculations and determination by the RCTC. Further, the claim was investigated by the RCTC; it could not be considered false. Holgate argued as to the allegation under section 12651, subdivision (a)(8) that there was no false claim because a claim was never submitted. Further, no falsity could be discovered because it was not proven the claim was false; the TUMF *may not* have been applied by the City. Additionally, the second and third causes of action fail because a false claim was never submitted.

Stephen responded to the objections to his deposition. He insisted that all of the statements went to his state of mind and were an admission by a party opponent. Holgate

19

also presented evidence that the indictment against Stephen had been dismissed on December 11, 2013. The plea had been withdrawn. A minute order and order dated December 11, 2013 was issued by the trial court in the criminal case, that Stephen's probation had been terminated because of his compliance and the plea of guilty and conviction was dismissed. The case had been dismissed. Holgate asked for judicial notice of the dismissal. Holgate also brought a motion to strike the fact that Stephen had been convicted, which RCTC had included in the disputed facts.

6. *RULING*

At the hearing on Holgate's and Jan's motions for summary judgment, the RCTC discussed the admission of the fact Stephen had pleaded guilty to bribing government officials and that it went to whether he submitted a false claim. The trial court stated that the fact of Stephen's misconduct had nothing to do with the negotiation for the RCTC to purchase the Property. The trial court noted, "The only thing that seems to me that might be relevant as to whether or not [Stephen] got a valid ruling on his tentative map is where Mr. Ayres was just one of the four votes, and I have nothing to connect the guilty plea or what he pled guilty to anything having to do with that fact. And so I think the factual history of this case is quite clear. The legal affect of those facts are what I need to determine."

The trial court found the facts were undisputed; it was a matter of law. The trial court overruled the objections to Stephen's declaration because they went to his state of mind. The trial court found that Stephen submitted a claim within the meaning of section 12650, subdivision (b)(1) when he submitted his Value Summary of the Property.

20

Despite the initial determination that Holgate filed a claim, thereby rejecting Holgate's argument that he never submitted a claim, the court found that it should grant summary judgment.

There were no triable issues of fact. Holgate submitted the Map on May 2, 2003. It vested on May 30, 2003. This was a key date because section 66474.2, subdivision (a) provides that ordinances shall only apply once the application is complete. The fact that the City formally approved the map after June 3, 2003, the day the TUMF went into effect, did not matter because it was when the Map was complete. However, the trial court noted that section 66474, subdivision (b) allowed the City to apply the TUMF to the Property because the ordinance had been initiated and published prior to the Map being complete. The City could have imposed the TUMF under section 66474.2, subdivision (b) at the time that RCTC purchased the Property.

The trial court noted, "The problem is that literally no one in 2007, when the property was being acquired by eminent domain, believed the property was subject to the TUMF. It had been three and a half years since the city council had acted. It had been three and a half years at least since the TUMF was imposed on June 3rd." The trial court noted that everyone involved—the city attorney, an appraiser hired by RCTC, RCTC's attorney, and Holgate's counsel—all believed that the exemption was applicable to the Property.

The trial court ruled, "I'm willing to bet that the City of San Jacinto has never applied 66474.2(b) to any project approved before June 3rd 2003. And I suspect if you look back from the date of filing of this lawsuit, they still haven't done so. And I would

21

even be surprised if as of today's date they've ever applied 66474 to a project that was approved before June 3rd of 2003. I just don't think that's how it's done. [¶] So, in other words, I don't think we have a false claim here. I think there's only a minuscule possibility that the City would have ever [imposed] that fee. And so I believe as a matter of law that however you want to characterize what was submitted by [Stephen] in reference to the TUMF, it was certainly not a false claim by any stretch of the imagination."

The trial court also noted that it did not understand how the RCTC could argue it was entitled to a return of five million dollars when there was no evidence that the City ever imposed the fee. Further, the fourth and fifth causes of action were based on a false claim, which was not shown by the evidence. The trial court reiterated that no one "with basic common sense awareness" would find that this was a false claim under the facts.

The RCTC responded that Holgate never argued there was not a false claim. The only arguments made were that there was no claim at all because everything was submitted at the RCTC's direction. The trial court disagreed that the issue of the falsity of the claim was not before the court. The RCTC also contended that no evidence had been presented by Holgate or any party that the City was not imposing the TUMF. The trial court responded that the RCTC had over three years to determine whether the fee was imposed. The trial court inquired, "Don't you think it's reasonable to infer that it would be common knowledge as to whether or not the City was imposing that fee on anybody at that time? And don't you think it's significant that the City Attorney, not anybody implicated in the Holgate/Ayres fiasco, believe that it couldn't be imposed?"

22

The trial court felt that once the RCTC found out about Stephen bribing officials, they wanted to try to get more money out of him.

Holgate prepared a written ruling. It listed the evidentiary findings of the trial court: (1) the misconduct that led to Stephen's guilty plea in the separate criminal proceeding had nothing to do with the negotiations for the purchase of the Property by the RCTC; (2) Stephen's request for more funds for the Property was a claim under CFCA; (3) in 2003, the City could have imposed the TUMF; (4) no evidence that the City ever imposed the TUMF on the Property; (5) when the Property was being purchased by the RCTC, the RCTC, its appraiser, its consultants and attorneys, as well as the City and its staff and attorneys, along with Holgate's attorneys, all believed the Property was exempt from the TUMF; and (6) there is no evidence that Stephen did not believe the Property was exempt from the TUMF. Holgate, as a matter of law, did not submit a false claim. As such, all of the causes of action fail.

The judgment as signed on May 28, 2014. Notice of entry of judgment was entered on August 7, 2014.

**STANDARD OF REVIEW**

"A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit. He does this by showing one or more elements of plaintiff's cause of action cannot be established or that he has a complete defense to the cause of action. At this point, plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or

23

defense." (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.) "Even though plaintiff bears the burden of proof at trial, a moving defendant bears the initial burden of showing the lack of any triable factual issue." (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839.)

"We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. [Citation.] The moving party bears the burden of proving that the claims of the adverse party are entirely without merit on any legal theory. [Citation.] The opposition must demonstrate only the existence of at least one triable issue of fact [citation], and all doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion." (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836.)

"On appeal following the grant of summary judgment, we review the record de novo, considering all of the evidence except that to which objections were made and sustained." (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848 [Fourth Dist., Div. Two].)

## DISCUSSION

The RCTC raises the following five issues on appeal: (1) did Holgate shift the burden as to the falsity of the claim without ever raising the validity of the TUMF exemption under section 66474.2, subdivisions (a) or (b); (2) did the trial court err when it determined that Holgate's claim for the five million value increase was based upon a nonexistent TUMF exemption and no false claim was submitted; (3) did the trial court err by determining that the TUMF exemption would not actually be applied by the City;

24

(4) does section 12651, subdivision (a)(8) require the submitting party to return the money if the initial submission was inadvertent; and (5) did triable issues of material fact exist as to whether Stephen intentionally submitted a false claim based upon his criminal case and guilty plea in that case. All of the claims essentially require this Court to determine whether (1) Holgate intentionally submitted a false claim; and/or (2) whether he was the inadvertent beneficiary of a false claim and therefore liable under section 12651, subdivision (a)(8). Even the RCTC agreed below and here that the essential determination of this case is whether a false claim was submitted. Accordingly, Holgate, in the motions for summary judgment, had to negate the essential elements that an intentionally false or inadvertently false claim was submitted to the RCTC.

"The CFCA permits the recovery of civil penalties and treble damages from any person who knowingly presents a false claim for payment to the state or a political subdivision. [Citation.] The CFCA was enacted in 1987 and was modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.) (FFCA). [Citation.] The FFCA 'was enacted in 1863 with the principal goal of "stopping the massive frauds perpetrated by large [private] contractors during the Civil War."' [Citation.] As presently enacted, the FFCA aims 'to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so.' [Citation.] Like the FFCA, the CFCA's ultimate purpose is ""to protect the public fisc.""" (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 973, fn. omitted.)

25

"The [CFCA] is designed 'to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities' . . . ." (*American Contract Services v. Allied Mold & Die, Inc.* (2001) 94 Cal.App.4th 854, 858; see also *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494.)

"The Legislature designed the CFCA '"to prevent fraud on the public treasury,"' and it '"should be given the broadest possible construction consistent with that purpose."' [Citations.] In other words, the CFCA '"must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides." [Citation.]' [Citations.] . . . Given the 'very close similarity' of the CFCA to the federal False Claims Act (federal FCA) [citation], 'it is appropriate to turn to federal cases for guidance in interpreting the [CFCA].'" (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 446; see also *City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 801-802.)

"Like the [CFCA], the federal act is to be construed broadly rather than restrictively. [Citations.] It is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.' [Citation.] Its reach extends to 'any person who knowingly assisted in causing the government to pay claims which were grounded in fraud.'" (*City of Pomona v. Superior Court*, *supra*, 89 Cal.App.4th at p. 802.)

A.      INTENTIONALLY SUBMITTING FALSE CLAIM; CONVERSION;

CONSTRUTIVE TRUST

The RCTC's second and third causes of action alleged the intentional presentation of a false claim pursuant to section 12651, subdivision (a)(1)-(3). The fourth and fifth causes of action relied upon a false claim being submitted to the RCTC.

Section 12651, subdivision (a), which is part of the CFCA, provides in pertinent part, "Any person who commits any of the following enumerated acts in this subdivision shall have violated this article and shall be liable to the state or to the political subdivision for three times the amount of damages that the state or political subdivision sustains because of the act of that person." Section 12651, subdivision (a)(1) provides that one of those acts is, "Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval." Subdivision (a)(2) provides, "Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim." Finally, subdivision (a)(3) provides, "Conspires to commit a violation of this subdivision."

A "claim," for purposes of the CFCA, includes "any request or demand . . . for money, property, or services," made to "an officer, employee, or agent of the state or of a political subdivision." (§ 12650, subd. (b)(1)(A).) A political subdivision includes a city, county, tax, or assessment district, or "other legally authorized local governmental entity with jurisdictional boundaries." (§ 12650, subd. (b)(3).)

Section 12560, subdivision (3) provides that "'Knowing' and 'knowingly' mean that a person, with respect to information, does any of the following: [¶] (A) Has actual

27

knowledge of the information.  [¶]  (B) Acts in deliberate ignorance of the truth or falsity of the information.  [¶]  (C) Acts in reckless disregard of the truth or falsity of the information.  [¶]  Proof of specific intent to defraud is not required."  In other words, "To be liable under the [CFCA], a person must have actual knowledge of the information, act in deliberate ignorance of the truth or falsity of the information, and/or act in reckless disregard of the truth or falsity of the information."  (*Rothschild v. Tyco Internat. (US), Inc.*, *supra*, 83 Cal.App.4th at pp. 494-495.)

The RCTC alleges that the intentional false claim made by Holgate was that the Property was exempt from the TUMF.  The RCTC's claim relies on its interpretation of section 66474.2.  That section provides as follows:

"(a) Except as otherwise provided in subdivision (b) or (c), in determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete pursuant to Section 65943 of the Government Code.

"(b) Subdivision (a) shall not apply to a local agency which, before it has determined an application for a tentative map to be complete pursuant to Section 65943, has done both of the following:

"(1) Initiated proceedings by way of ordinance, resolution, or motion.

"(2) Published notice in the manner prescribed in subdivision (a) of Section 65090 containing a description sufficient to notify the public of the nature of the proposed change in the applicable general or specific plans, or zoning or subdivision ordinances.

28

"A local agency which has complied with this subdivision may apply any ordinances, policies, or standards enacted or instituted as a result of those proceedings which are in effect on the date the local agency approves or disapproves the tentative map.

"(c) If the subdivision applicant requests changes in applicable ordinances, policies or standards in connection with the same development project, any ordinances, policies or standards adopted pursuant to the applicant's request shall apply."

Here, the RCTC insists that prior to the Map being complete, the TUMF ordinance had been initiated and notice had been published. As such, the RCTC concludes the Property was in fact subject to the TUMF. The RCTC relies exclusively on its interpretation of section 66474.2.

There is no triable issue of fact as to whether Holgate had actual knowledge of section 66474.2, that he acted in deliberate ignorance of the truth or falsity of the statutory language, or acted in reckless disregard of the truth or falsity of the information. Stephen declared that he had no knowledge of section 66474.2 until he was notified by RCTC in 2010. At the time Holgate sold the Property, Rutan and Tucker, who represented Holgate, prepared an advisory letter informing Holgate that the Property was in fact exempt from the TUMF. There was no mention of section 66474.2. Holgate sought out an opinion from legal counsel as to whether the TUMF applied and was advised it did not apply. There was no showing of actual knowledge that the fee did not apply to the Property, or even a reckless disregard of the truth or deliberate ignorance.

29

Further, both parties agree that at the time the RCTC purchased the Property, all persons involved believed that the Property was exempt from the TUMF. Most importantly, Hartel, the City's planning director, spoke with Hennessey and advised her that the TUMF did not apply to the Property. There was no evidence that Hartel had any connection with Holgate. Other officials, including assistant city manager Hults, believed the TUMF did not apply to the Property. If this court were to conclude that Holgate acted in deliberate ignorance of the truth and falsity, and/or acted in reckless disregard of its truth or falsity, this would equally apply to Hennessey and all the other City officials who believed the TUMF did not apply.

Moreover, the RCTC had equal access to the statutory language at the time that it purchased the Property. It is inconceivable how this equal access to the same statutory language constituted fraud on Holgate's part. "The False Claims Act imposes liability only on those who 'knowingly' present a 'false or fraudulent claim' to the government. [Citation.] Mere negligence and 'innocent mistake[s]' are not sufficient to establish liability under the FCA." (*U.S. ex rel. Plumbers & Steam. v. C.W. Roen Const.* (9th Cir.1999) 183 F.3d 1088, 1092-1093.)

There simply was no showing of fraud in this case. At most, Holgate acted negligently or made an innocent mistake. There is no concrete evidence of why the City officials concluded the TUMF did not apply. It is equally plausible there was simply a misunderstanding of the statute by all parties involved; or the parties were all unaware of the statute, including Holgate; or there was a decision by the City not to impose the fee

30

despite the language. It cannot be ignored that everyone that reviewed the issue reached the same conclusion.

Noticeably absent from the Complaint, the opposition to the motions for summary judgment, and this appeal, are any cases cited by the RCTC in which an individual has violated the CFCA based on the interpretation of a statute. Moreover, RCTC provides no case law that a violation of the CFCA occurs when the parties have equal access to investigate the claim. There was no concealment by Holgate. In fact, Holgate specifically addressed the exemption by having an advisory letter prepared by the attorneys. The RCTC could have investigated the claim and determined that section 66474.2, subdivisions (b) and (c) applied to the Property and the TUMF in fact could be applied by the City.

Moreover, the problem with the RCTC's premise is that it assumes the City would have imposed the TUMF at the time of the negotiations if Holgate had sold the Property to a developer. However, the RCTC did not dispute below that Hartel, the City's planning director, confirmed that the Property was exempt from the TUMF. With that evidence, no reasonable jury could conclude that the City at that time would have imposed the TUMF. RCTC merely speculates that the fee would have been imposed. However, all parties involved believed it was not applicable. The RCTC presented no evidence to support its position that the City would have imposed the fee.

The RCTC argues that Holgate failed to shift the burden to RCTC on the falsity of the claim. The RCTC insists by not addressing whether the claim was false, i.e. that the TUMF would have been imposed pursuant to section 66474.2, subdivisions (b) and (c),

31

the burden was not shifted to it to prove the falsity. We disagree. Holgate responded in the motions for summary judgment that a false claim was not submitted because everyone agreed the fee did not apply, including the City's planning director, Hartel. The motions for summary judgment properly alleged that the RCTC could not show a false claim. The RCTC did not meet its burden of showing a triable issue of fact.

The RCTC also argues that once the trial court determined that section 66474.2, subdivision (b) applied, and the City could impose the TUMF, Holgate necessarily submitted a false claim. This ignores that there must be a knowing submission of a false claim or it must be submitted with reckless disregard for the truth. Just stating that the City could have imposed the TUMF, and that Holgate and their attorneys misinterpreted the statutory language, is not enough to show a false claim, as described in detail *ante*.

Based on the foregoing, there were no triable issues of fact as to whether Holgate submitted a false claim. As such, the second, third, fourth and fifth causes of action fail.

### B.    BENEFICIARY OF AN INADVERTENT FALSE CLAIM

The RCTC's remaining first cause of action is based on a violation of section 12651, subdivision (a)(8). Section 12651, subdivision (a), subsection (8) provides for liability under the CFCA if a person, "Is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim."

"In an analysis of the CFCA prepared by the Center for Law in the Public Interest, the sponsor of the bill (Senate Com. on Judiciary, Background Information on Assem.

32

Bill No. 1441; Assem. Ways and Means Com., Republican Analysis of Assem. Bill No. 1441, Jun. 8, 1987), it was explained that '[p]aragraph (a)(8) is intended to reach situations where a person benefits from grossly negligent or inattentive business practices with the government by the inadvertent submission of a false claim or claims. Inadvertent submissions of false claims which are subsequently discovered by the beneficiary of such a claim and not disclosed to the State or a political subdivision prior to the filing of an action . . . will be treated the same as an intentionally submitted false claim.' (Section-by-Section Analysis of Draft Prepared by Center for Law in the Public Interest, p. 9, italics added; Senate Com. on Judiciary, Rep. on Assem. Bill No. 1441 (1987–1988 Reg. Sess.) as amended July 9, 1987, p. 5.)" (*Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142 Cal.App.4th 636, 649.)  This section requires submission of a false claim.  (*Id.* at p. 648.)

Here, the RCTC failed to establish a triable issue of material fact.  Its allegations are based on pure speculation that an inadvertent false claim had been submitted.  While it may be true that the City could have imposed the fee under the language of section 66474.2, subdivision (b) (as found by the trial court), at the time that the RCTC purchased the Property, it received notice from the City (through Hartel), that the City considered that the Property was not subject to the TUMF.  That determination was based either on no knowledge of section 66474.2, or the City had decided not apply the fee.

There was no allegation in the Complaint that the City in 2007 ignored section 66474.2.  It is entirely possible the City chose not to impose the TUMF.  It is pure speculation on the part of the RCTC that the City would change its mind and decide to

33

impose the fee. In fact, all of the evidence established that the City did not intend to impose the TUMF to the Map because it was complete prior to the TUMF ordinance talking affect. As such, Holgate would not be the inadvertent beneficiary of a false claim if the fee was never imposed. We have no information that the City would have imposed the TUMF. Hence, the RCTC did not meet its burden to establish even an inadvertent claim.

Moreover, finding that Holgate is liable under section 12651, subdivision (a)(8) would not serve the purpose for which the CFCA was enacted. Holgate never sought to hide the statute from the RCTC. Further, as stated above, the RCTC never presented any evidence that the City intended to impose the TUMF or that it agreed with RCTC's interpretation of section 66474.2. It is only the RCTC's belief that the City ignored section 66474.2, or misinterpreted it; and that if the City knew about the statutory language, it would have imposed the fee. Again, there is no inadvertent false claim to establish liability under the CFCA.

At oral argument, RCTC claimed it need not show that Holgate submitted the false claim. Rather, it only needed to show that Holgate was a beneficiary of a false claim. Moreover, relying on *Armenta ex. rel. v. City of Burbank v. Mueller Co.*, *supra*, 142 Cal.App.4th 636, RCTC insisted at oral argument that paragraph (a)(8) of section 12651 is intended to reach the situation where the person benefits from grossly negligent or inattentive business practices, which result in a false claim being inadvertently submitted. While this may be true, summary judgment is appropriate because RCTC has never

34

presented evidence to show that there was a false claim. As the trial court stated, there was no evidence that the TUMF fee was ever imposed or that it would be imposed.

The only remaining issue is the RCTC's claim that a material issue of disputed fact remains whether Stephen bribed City officials in order to obtain the Development Agreement. However, the Development Agreement only extended the Map. RCTC does not explain or present evidence as to how a claim under the CFCA could be raised as to obtaining the Development Agreement. A violation of CFCA involves a false claim, which we have already rejected. RCTC simply did not present any facts or evidence that the Development Agreement constituted a false claim.

## DISPOSITION

The judgment is affirmed. As the prevailing party, respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

35